United States District Court
Southern District of Texas
**ENTERED**
January 24, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFONSO TORO, (TDCJ # 2303030), | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. H-21-3768 |
| EDGAR HULIPAS, *et al.*, | § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alfonso Toro, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 against Texas Department of Criminal Justice ("TDCJ") employees Edgar Hulipas, M.D., and Justin Thomas. (Docket Entry No. 1). The Court dismissed Toro's claim against Thomas and ordered Dr. Hulipas to file a response. (Docket Entry No. 8). Dr. Hulipas responded with a motion for summary judgment limited to his affirmative defense of failure to exhaust, (Docket Entry No. 16), to which Toro filed a response. (Docket Entry No. 21). Having considered the motion, the response, the complaint, the probative summary judgment evidence, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons explained below.

### I.  BACKGROUND AND CLAIMS

When Toro entered TDCJ custody in February 2019, he was confined to a wheelchair due to a severe preexisting back injury. (Docket Entry No. 1, p. 4). As a

consequence of Toro's injury, he needs catheters to urinate. (*Id.*).

In his civil rights complaint, Toro alleges that in late 2020 while he was incarcerated in TDCJ's Jester III Unit, he complained to Dr. Hulipas that the single catheter per day that was ordered for him was not sufficient to meet his needs. (*Id.* at 3, 5). Toro alleges that Dr. Hulipas refused to order additional catheters for him, instead instructing him to wash and reuse the one catheter throughout the day. (*Id.* at 4-5). Toro objected, telling Dr. Hulipas that it was "not lawful" or safe to reuse the catheters, which were labelled for "single use." (*Id.* at 5). Despite this, Dr. Hulipas refused to write an order to provide Toro with additional catheters. (*Id.*).

Toro alleges that in January and February 2021, he submitted multiple sick-call requests asking to receive additional catheters each day. (*Id.* at 5-6). Toro alleges that Dr. Hulipas refused to see him to resolve these requests. (*Id.* at 6). Instead, Dr. Hulipas offered to write an order for Toro to have a permanent catheter implanted. (*Id.*). Toro declined this option. (*Id.*).

Toro alleges that he developed a urinary tract infection in February 2021, which he attributes to being forced to reuse the single-use catheters. (*Id.*). He alleges that Dr. Hulipas refused to treat him for the urinary tract infection and refused to write an order to provide him with additional catheters each day despite the infection. (*Id.* at 6-7). The infection cleared up on its own in March 2021. (*Id.* at 7).

Toro filed this action on November 15, 2021, alleging that Dr. Hulipas had violated, and was continuing to violate, his constitutional right to adequate medical care by refusing

to provide him with a sufficient number of catheters each day and by requiring him to re-use the single-use catheters. Toro seeks an injunction to require TDCJ to provide him with additional catheters each day and to remove him from Dr. Hulipas's care. (*Id.* at 9). He also seeks unspecified compensatory, nominal, and punitive damages. (*Id.*).

Dr. Hulipas moves for summary judgment, arguing only that Toro failed to exhaust his administrative remedies before filing this lawsuit. In support, he attaches a compilation of all the prison grievances submitted by Toro between February 1, 2019, and February 26, 2022. (Docket Entry No. 16-1). He also attaches the affidavit of TDCJ employee Jessica Riley, who testifies as follows:

> My name is Jessica Riley and I am an employee of the Texas Department of Criminal Justice (TDCJ), a governmental agency. I am over 21 years of age, of sound mind, capable or making this affidavit, and personally acquainted with the facts herein stated.
>
> I am the custodian of records for the Inmate Grievance Department, a part of the TDCJ located in Huntsville, Texas. Attached are true and correct copies of the grievance records of inmate Toro, Alfonso TDCJ#02303030, CN#4.21-CV-03768, for the time period of 2/1/2019-2/26/2022, which are kept by the TDCJ in the regular course of its business activity. The entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ, and were made at or near the time of the occurrence of those matters set forth by, or from information transmitted by, a person with knowledge of those matters.

(Docket Entry No. 16-1, p. 2).

In his response, Toro alleges that the TDCJ grievance records filed with the Court are incomplete. He alleges that he filed both Step 1 and Step 2 grievances against Dr. Hulipas, and he asserts that Riley's affidavit and the TDCJ grievance records show only that "those responsible for keeping a record did not do so." (Docket Entry No. 21, p. 2).

3

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the record "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). The party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)).

When considering a motion for summary judgment, the Court must view all evidence and draw all inferences "in the light most favorable to the opposing party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380. However, the Court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion

4

for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

### B. *Pro Se* Pleadings

Because Toro is representing himself, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, *pro se* litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

### III. ANALYSIS

Because Toro is a prisoner seeking relief under 42 U.S.C. § 1983, his claim is subject to the provisions of the Prison Litigation Reform Act ("PLRA"). Relevant to the issues before the Court, the PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or specific episodes." *Porter v. Nussle*, 534

U.S. 516, 532 (2002). It is intended to give prison officials the "time and opportunity to address complaints internally," *id.* at 525, and to promote resolution of complaints in a faster and more economical way than litigation. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Exhaustion is mandatory, and strict compliance is required even when a particular remedy, such as money damages, is unavailable through the grievance process. *See Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to filing suit in federal court. *See Woodford*, 548 U.S. at 83 (2006).

TDCJ provides a two-step procedure for processing administrative grievances, and it provides prisoners with detailed instructions on how to submit their grievances. *See Johnson v. Johnson,* 385 F.3d 503, 515-16 (5th Cir. 2004). In the first step, the prisoner files a Step 1 grievance within fifteen days of the complained-of incident. *Id.* at 515. This Step 1 grievance must include factual allegations that are sufficiently specific to "give prison officials 'fair notice' of the problem that will form the basis of the prisoner's suit." *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 788 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (quoting *Johnson,* 385 F.3d at 516). The Step 1 grievance is considered by the administration at the prisoner's assigned unit, and prison officials have forty days in which to decide the grievance. *See Ramirez v. Collier,* 142 S. Ct. 1264, 1275 (2022) (setting out TDCJ's grievance procedures). If the prisoner is dissatisfied with the response to his Step 1 grievance, he may file a Step 2 grievance appealing that response within

fifteen days. *Id.* Investigations into and resolutions of Step 2 grievances are handled at the state level. *See Johnson,* 385 F.3d at 515. TDCJ officials have forty days in which to decide the Step 2 grievance. *See Ramirez*, 142 S. Ct. at 1275. "Only after exhausting both steps of that grievance process by a prisoner file suit." *Id.*

Toro's complaint in this action is that Dr. Hulipas refused to order the proper number of catheters for his daily use and refused to treat him for a urinary tract infection. But a thorough review of the TDCJ grievance records shows that Toro did not exhaust his administrative remedies as to either claim. The records show that Toro filed two Step 1 grievances against Dr. Hulipas relating to the pain medications prescribed to treat Toro's nerve pain: one on June 16, 2020, and the second on December 14, 2020. (Docket Entry No. 16-1, pp. 3-4, 42-43). Neither of these Step 1 grievances complain about the number of catheters Dr. Hulipas had ordered for Toro or Dr. Hulipas's refusal to treat him. In addition, the TDCJ records do not show that Toro filed a Step 2 grievance to appeal either of these Step 1 responses. Neither of these grievances gave TDCJ fair notice that Toro had a complaint concerning the number of catheters Dr. Hulipas had ordered for him or that dr. Hulipas was refusing to treat him. Therefore, neither of these grievances exhausted Toro's administrative remedies as to his current claims against Dr. Hulipas.

The records show that Toro did file a specific complaint concerning a different physician's order for catheters in Step 1 grievance # 2022024523 filed on November 1, 2021. In that grievance, Toro complained that Dr. Nguyen, a physician at the Wayne Scott

Unit,[1] was refusing to order the appropriate number of catheters for him and was improperly instructing him to wash and reuse the single-use catheters. (Docket Entry No. 16-1, pp. 87-88). The Unit responded to this grievance by stating that the medical advice given by Dr. Nguyen was proper. (*Id.* at 88). While this grievance arguably gave TDCJ fair notice of the substance of Toro's current complaint concerning the number of catheters ordered for him, Toro never submitted a Step 2 grievance appealing from the Step 1 response. He therefore did not exhaust his administrative remedies as to his claim of medical neglect based on the insufficient number of catheters ordered by TDCJ physicians.

The records also show that Toro filed a Step 1 grievance on August 20, 2021, alleging that multiple unidentified nurses at the Wayne Scott Unit were failing or refusing to deliver the proper number of catheters to him each day. (Docket Entry No. 16-1, p. 55). Toro asserted that his "prior unit" had provided him with "90 catheters, 60 surgical lubricant, and gloves every two weeks." (*Id.*). He alleged that the nursing staff was not delivering the proper number of catheters to him, and he claimed that the nurses would promise to return with his additional supplies, but then would not. (*Id.*). The Unit response to the Step 1 grievance stated that the nurses were delivering all the catheters ordered for him and that if he believed more catheters should be provided, he should submit a Sick Call Request for a medical evaluation. (*Id.*). Toro filed a Step 2 grievance appealing this

---

[1] The grievance records show that Toro was incarcerated at TDCJ's Wayne Scott Unit from at least August 1, 2021, until November 2, 2021. (Docket Entry No. 16-1, p. 96). Dr. Hulipas, who worked solely at TDCJ's Jester III Unit, did not provide any medical care to Toro during that time period.

response, which was denied on November 4, 2021, because Toro had been transferred back to the Jester III Unit. (*Id.* at pp. 126-27). This grievance, which claimed that the nursing staff was not following the physician's orders concerning the number of catheters to be delivered to him, did not provide TDCJ with fair notice of Toro's claim that the physician's orders were improper, and it is therefore insufficient to exhaust Toro's administrative remedies as to his current claims.

Toro's response to the motion and evidence is limited to his assertion that he did file both Step 1 and Step 2 grievances against Dr. Hulipas for his current claims and that the TDCJ records are incomplete. But Toro offers no evidence that he filed the grievances necessary to exhaust his administrative remedies as to his current claim, and his unsworn and unsubstantiated assertions that he did are insufficient to create genuine issues of material fact. While the Court is required to resolve factual controversies in favor of the nonmoving party, it will do so "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. Toro has failed to point to any evidence sufficient to raise a genuine issue of material fact relating to exhaustion that would preclude summary judgment.

In sum, the uncontroverted summary judgment evidence establishes that Toro failed to pursue his current claim for inadequate medical care through both steps of the TDCJ grievance process before filing this lawsuit. Toro has not pointed to evidence sufficient to create a genuine issue of material fact concerning exhaustion that would preclude entry of summary judgment. Accordingly, Dr. Hulipas is entitled to summary judgment in his

9

favor, and Toro's claim against him is **DISMISSED WITH PREJUDICE** for lack of exhaustion.

## IV. CONCLUSION

For the above reasons, Defendant Edgar Hulipas's motion for summary judgment (Docket Entry No. 16) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE** for failure to exhaust. Any and all pending motions are **DISMISSED AS MOOT**.

SIGNED at Houston, Texas on 23 January, 2023.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE